# RECORD NOS.
# 11-3696(L); 11-3883

11-3729; 11-3834; 11-3908; 11-3910; 11-3916; 11-3965; 11-3970; 11-3972; 11-4061; 11-4064

In The

# United States Court of Appeals

For The Second Circuit

**Carl Blessing, Edward A. Scerbo, John Cronin, Charles Bonisignore, Andrew Dremak, Todd Hill, Curtis Jones, Joshua Nathan, James Sacchetta, David Salyer, Susie Stanaj, Paul Stasiukevicius, Scott Byrd, Glenn Demott, Melissa Fast, James Hewitt, Ronald William Kader, Edward Leyba, Greg Lucas, Kevin Stanfield, Todd Stave, Paola Tomassini, Janel Stanfield, Brian Balaguera, Individually and on behalf of all others similarly situated,**

*Plaintiffs – Appellees*,

v.

**Sirius XM Radio Inc.,**

*Defendant – Appellee*,

**(Caption Continued Inside Cover)**

━━━━━━━━

**Petition for Rehearing and Rehearing *En Banc* of Appellant Nicolas Martin**

━━━━━━━━

Theodore H. Frank
CENTER FOR CLASS ACTION FAIRNESS
1718 M Street, NW, No. 236
Washington, DC 20036
(703) 203-3848
tedfrank@gmail.com

*Counsel for Appellant Nicolas Martin (11-3883)*

THE LEX GROUP ♦ 1108 East Main Street ♦ Suite 1400 ♦ Richmond, VA 23219
(804) 644-4419 ♦ (800) 856-4419 ♦ Fax: (804) 644-3660 ♦ www.thelexgroup.com

**Marvin Union, Adam Falkner, Nicolas Martin, Jill Piazza, Ken Ward, Ruth Cannata, Lee Clanton, Craig Cantrall, Ben Frampton, Kim Frampton, Joel Broida, John Sullivan, Sheila Massie, Jason M. Hawkins, Steven Crutchfield, Scott D. Krueger, Asset Strategies, Inc., Charles B. Zuravin, and Jennifer Deachin, Randy Lyons, Tom Carder, John Ireland, Jeannie Miller, Michael Hartleib, Brian David Goe, Donald K. Nace, Christopher Batman,**

*Objectors - Appellants,*

**Linda Mrosko, Lange M. Thomas,**

*Objectors.*

**ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
AT NEW YORK CITY**

**THE LEX GROUP** ♦ 1108 East Main Street ♦ Suite 1400 ♦ Richmond, VA 23219
(804) 644-4419 ♦ (800) 856-4419 ♦ Fax: (804) 644-3660 ♦ www.thelexgroup.com

# Table of Contents

Table of Contents.................................................................................................................i

Table of Authorities..........................................................................................................ii

I.    Class members have standing to challenge unconstitutional race-based aspects of Rule 23(g) class certification orders; the Panel Decision requiring a claim of "actually inferior" representation conflicts with Supreme Court and Second Circuit precedent.........................................2

    A.    The District Court issues a race-based class certification order and the Second Circuit affirms.................................................................................2

    B.    Both the Supreme Court and the Second Circuit presume injury-in-fact for challenges to race-based discrimination in judicial proceedings. .........4

    C.    In the alternative, class members have third-party standing to attack an unconstitutionally race-conscious Rule 23(g) order. ...................................8

II.    Rehearing is also appropriate because of the panel's error of fact and law.............................................................................................................12

Conclusion.......................................................................................................................15

Proof of Service..............................................................................................................16

Certificate of Compliance with Fed. R. App. 32(a)(7)(C) .................................17

# Table of Authorities

<u>Cases</u>

*Adarand Constructors, Inc. v. Pena,*
    515 U.S. 200 (1995) ...............................................................................7

*Amchem Prods. v. Windsor,*
    521 U.S. 591 (1997) ...............................................................................8

*American Immig. Lawyers Ass'n v. Reno,*
    199 F.3d 1352 (D.C. Cir. 2000) ...........................................................10

*In re Amer. Express Merchants' Lit.,*
    667 F.3d 204 (2d Cir. 2012),
    *cert. granted,* -- S. Ct. --, No. 12-133 (Nov. 9, 2012) .................................8

*Batson v. Kentucky,*
    476 U.S. 79 (1985)..................................................................2, 5-6, 15

*Bennett v. Spear,*
    520 U.S. 154 (1997) .............................................................................10

*Blessing v. Sirius XM, Inc.,*
    No. 11-3696-cv (L) (2d Cir. Dec. 20, 2012).......................................*passim*

*In re Bluetooth Headset Prod. Liab. Litig.,*
    654 F.3d 935 (9th Cir. 2011) ................................................................9

*Bond v. United States,*
    131 S. Ct. 2355 (2011) ..........................................................................9

*Brennan v. NYC Bd. of Educ.,*
    260 F.3d 123 (2d Cir. 2001)............................................................ 1, 14

*Campbell v. Louisiana,*
    523 U.S. 392 (1998) ...................................................................1, 6-7, 10-11

*Camreta v. Greene,*
    131 S. Ct. 2020 (2011) ..........................................................................9

*Caplin & Drysdale v. United States,*
    491 U.S. 617 (1989) .............................................................................11

*In re Cendant Corp. PRIDES Litig.*,
    243 F.3d 722 (3d Cir. 2001)................................................................9

*Creative Montessori Learning Centers v. Ashford Gear LLC*,
    662 F.3d 913 (7th Cir. 2011) ...........................................................10

*Davis v. Secretary for Dept. of Corrections*,
    341 F.3d 1310 (11th Cir. 2003) ..........................................................6

*Devlin v. Scardeletti*,
    536 U.S. 1 (2002).................................................................................9

*Edmonson v. Leesville Concrete Co.*,
    500 U.S. 614 (1991) ..................................................... 1-2, 5-6, 10-11

*Eisen v. Carlisle & Jacquelin*,
    417 U.S. 156 (1974) ...........................................................................8

*Georgia v. McCollum*,
    505 U.S. 42 (1992)............................................................................12

*In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*,
    55 F.3d 768 (3d Cir. 1995) .................................................................8

*Gratz v. Bollinger*,
    539 U.S. 244 (2003) ...........................................................................7

*Grutter v. Bollinger*,
    539 U.S. 306 (2003) ...........................................................................3

*Hansberry v. Lee*,
    311 U.S. 32 (1940)..............................................................................6

*Holland v. Illinois*,
    493 U.S. 474 (1990) .........................................................................10

*In re JP Morgan Chase Cash Balance Litig.*,
    242 F.R.D. 265 (S.D.N.Y. 2007)....................................................3-4

*In re Literary Works in Electronic Databases Copyright Litig.*,
    654 F.3d 242 (2d Cir. 2011)..........................................................6, 12

*Lujan v. Defenders of Wildlife,*
 504 U.S. 555 (1992) ................................................................9

*In re Mercury Interactive Corp. Sec. Lit.,*
 618 F.3d 988 (9th Cir. 2010) ........................................... 1, 14

*Nachshin v. AOL,*
 663 F.3d 1034 (9th Cir. 2011) ...............................................9

*Northeastern Fla. Chapter, Assoc. Gen. Contractors of Amer. v. Jacksonville,*
 508 U.S. 656 (1993) .............................................................. 7-8

*Ortiz v. Fibreboard Corp.,*
 527 U.S. 815 (1999) ................................................................6

*Philips Petroleum Co. v. Shutts,*
 472 U.S. 797 (1985) ........................................................... 6, 10

*Powers v. Ohio,*
 499 U.S. 400 (1991) ....................................................2, 5-6, 10

*Rockefeller v. Powers,*
 74 F.3d 1367 (2d Cir. 1995) ..........................................1, 7-8, 11

*Rose v. Mitchell,*
 443 U.S. 545 (1979) ..........................................................2, 5-6

*Rutter & Wilbanks Corp. v. Shell Oil Co.,*
 314 F.3d 1180 (10th Cir. 2002) ...............................................9

*Tankleff v. Senkowski,*
 135 F.3d 235 (2d Cir. 1998) ...................................................6

*Thomas v. Mundell,*
 572 F.3d 756 (9th Cir. 2009) .................................................12

*Union Asset Mgmt. Holding A.G. v. Dell, Inc.,*
 669 F.3d 632 (5th Cir. 2012) ..................................................9

*United States v. Nelson,*
 277 F.3d 164 (2d Cir. 2002) ..............................................2, 6

*Vasquez v. Hillery*,
    474 U.S. 254 (1986) ............................................................2, 5

*Weinberger v. Wiesenfeld*,
    420 U.S. 636 (1975) ............................................................2

Rules and Statutes

Fed. R. App. Proc. 28(i) ...........................................................15

Fed. R. App. Proc. 35 ...............................................................1

Fed. R. App. Proc. 40 ........................................................... 1, 15

Fed. R. Civ. Proc. 23 ................................................................3

Fed. R. Civ. Proc. 23(a)(4) ........................................................4

Fed. R. Civ. Proc. 23(b)(3) ........................................................8

Fed. R. Civ. Proc. 23(e) ............................................................10

Fed. R. Civ. Proc. 23(e)(5) ........................................................9

Fed. R. Civ. Proc. 23(g) .......................................1-4, 8, 10-12

Fed. R. Civ. Proc. 23(g)(1)(A)(i) ..............................................12

Fed. R. Civ. Proc. 23(h) .......................................................13-15

U.S. Const., Am. V ............................................................... 1-2

U.S. Const., Am. VI ...............................................................10

U.S. Const., Am. XIV ..........................................................2, 5

U.S. Const., Art. III................................................................10

Other Authorities

Advisory Committee Notes to the 2003 amendments to Rule 23(h)............................14

Hurwitz, Michael H., *Judge Harold Baer's Quixotic Crusade for Class Counsel Diversity*, 17 Cardozo J.L. & Gender 321 (2011).........................................3

5 *Moore's Federal Practice* § 23.124[4] (Matthew Bender 3d ed. 2009)...............14

## Petition for Panel Rehearing or Rehearing *En Banc*

Rehearing or rehearing *en banc* is appropriate under Fed. R. App. 40 or Fed. R. App. Proc. 35 because the panel decision conflicts with decisions of the United States Supreme Court and this Court and consideration by the full court is therefore necessary to secure and maintain uniformity of the court's decisions. *Compare Blessing v. Sirius XM, Inc.*, No. 11-3696-cv (L) slip op. at 8-9 (2d Cir. Dec. 20, 2012) ("Decision") (allegation by class member that district court's racially discriminatory Rule 23(g) order "may interfere with" representation insufficient to create standing to challenge order without allegation of "actually inferior" representation) *with, inter alia, e.g., Campbell v. Louisiana*, 523 U.S. 392 (1998) (white criminal defendant has third-party standing to object to discrimination against black persons in selection of grand jurors); *Edmonson v. Leesville Concrete Co.*, 500 U.S. 614 (1991) (plaintiff has standing to raise Fifth Amendment claim over private attorney's race discrimination in civil judicial proceeding); *Rockefeller v. Powers*, 74 F.3d 1367, 1375-76 (2d Cir. 1995) ("denial of equal treatment" rather than "ultimate inability to obtain the benefit" injury in fact).

Rehearing or rehearing *en banc* is also appropriate for the independent reason that the panel decision is based on the false factual premise that Martin waived arguments that he actually made and because the panel's decision on this question conflicts with *Brennan v. NYC Bd. of Educ.*, 260 F.3d 123, 130 n.4 (2d Cir. 2001) and *In re Mercury Interactive Corp. Sec. Lit.*, 618 F.3d 988, 993-94 (9th Cir. 2011). Decision 5. Consideration by the full court is therefore necessary to secure and maintain uniformity of the court's decisions.

I. **Class members have standing to challenge unconstitutional race-based aspects of Rule 23(g) class certification orders; the Panel Decision requiring a claim of "actually inferior" representation conflicts with Supreme Court and Second Circuit precedent.**

"The Fourteenth Amendment's mandate that race discrimination be eliminated from all official acts and proceedings of the State is most compelling in the judicial system." *Powers v. Ohio*, 499 U.S. 400, 415 (1991); *accord United States v. Nelson*, 277 F.3d 164, 208 (2d Cir. 2002).[1] But under the panel's decision, if a court requires as a condition of appointing class counsel that only white counsel appear in court on behalf of the class, class members must contend that the all-white counsel "was actually inferior." Decision 8. The Supreme Court has repeatedly and consistently rejected a requirement of a showing of prejudice to challenge racial discrimination in judicial proceedings. *Edmonson*, 500 U.S. 614; *Powers*, 499 U.S. 400; *Vasquez v. Hillery*, 474 U.S. 254 (1986); *Batson v. Kentucky*, 476 U.S. 79, 100 (1986); *Rose v. Mitchell*, 443 U.S. 545, 556 (1979) (citing and quoting cases dating back to 1880). Under these precedents, class members suffer injury-in-fact because of the taint of race discrimination in a Rule 23(g) order, or, at a minimum, have third-party standing to challenge race discrimination in a judicial proceeding.

A. **The District Court issues a race-based class certification order and the Second Circuit affirms.**

In 2007, Judge Baer first imposed an unprecedented race and gender

---

[1] The Supreme Court's approach to Fifth Amendment equal protection claims "has always been precisely the same as to equal protection claims under the Fourteenth Amendment." *Weinberger v. Wiesenfeld*, 420 U.S. 636, 638 n.2 (1975). *E.g.*, *Edmonson*, 500 U.S. 614 (applying *Powers* to federal civil proceeding); *Nelson,* 277 F.3d 164 (federal criminal proceeding).

requirement on class counsel in a class certification order. *In re J.P. Morgan Chase Cash Balance Litig.*, 242 F.R.D. 265, 277 (S.D.N.Y. 2007). The court first noted that Rule 23 permits courts to consider "any other factors relevant to counsel's ability to fairly and adequately represent the interests of the class." *Id.* Then, based only upon a statement that the class "includes thousands of Plan participants, both male and female, arguably from diverse racial and ethnic backgrounds," the court proceeded to hold that it is "important to all concerned that there is evidence of diversity, in terms of race and gender, of any class counsel that I appoint." *Id. JP Morgan* established a "diversity requirement": "at least one minority lawyer and one woman lawyer with requisite experience at the firm be assigned to this matter." *Id.* Such quotas neither serve a compelling governmental interest nor are "narrowly-tailored" relief, as required by the Constitution. *Grutter v. Bollinger*, 539 U.S. 306, 334 (2003). This requirement, repeated in other Rule 23(g) orders by the same judge over the years, has been subject to academic criticism, and has not been adopted by any other district court.[2]

On March 29, 2011, in this case, the district court certified a class of Sirius customers. JA 214-227 (Docket No. 85) (SPA 1-14). As part of the appointment of class counsel under Fed. R. Civ. Proc. 23(g), the court ordered class counsel "in accordance with [the court's] previous opinions on this score" to "ensure that the lawyers staffed on the case fairly reflect the class composition in terms of relevant race and gender metrics." JA 227 (*citing JP Morgan*). As in *JP Morgan*, there was no finding that there was a compelling interest to justify the race-based requirement. *Id.*

---

[2] *See generally* Michael H. Hurwitz, *Judge Harold Baer's Quixotic Crusade for Class Counsel Diversity*, 17 Cardozo J.L. & Gender 321, 327 (2011).

Appellant Nicolas Martin timely objected that the conditions of the Rule 23(g) appointment violated the Constitution. JA 828-30 (Docket No. 134). Martin objected that "The fact that class counsel must comply with quotas and choose case staffing based on race or gender rather than merit and the best interests of the class may interfere with their ability to provide the best representation for the class, and thus brings into question the Rule 23(a)(4) adequacy of class counsel." JA 829. The district court approved the settlement and issued final judgment without mentioning or addressing Martin's objection to the use of the *JP Morgan* standard. JA 1344-56 (Docket Nos. 160 and 162) (SPA 15-27).

Martin appealed, and the panel affirmed in a summary order. The panel held that class members failed to show a "concrete and particularized harm to a legally protected interest." Decision 8-9.

> "Although objectors allege that staffing a case with an eye to diversity 'may interfere with [counsel's] ability to provide the best representation for the class,' J.A. 829, they never contend that class counsel's representation was actually inferior. As objectors failed to state an injury-in-fact, we find that they lack standing to challenge the district court's diversity request in its class certification order." [*Id.*]

**B.    Both the Supreme Court and the Second Circuit presume injury-in-fact for challenges to race-based discrimination in judicial proceedings.**

The panel's holding that class members must allege that representation "was actually inferior" before they can challenge race discrimination ordered by a judge in a judicial proceeding is unprecedented. The Supreme Court has said that racial discrimination in judicial proceedings by *private attorneys* is not only *per se* actionable, but that "the injury caused by the discrimination is made more severe because the

government permits it to occur within the courthouse itself." *Edmonson*, 500 U.S. at 628. "Since the beginning, the Court has held that where discrimination in violation of the Fourteenth Amendment is proved, [t]he court will correct the wrong, will quash the indictment[,] or the panel[;] or, if not, the error will be corrected in a superior court, and ultimately in this court upon review, and all without regard to prejudice" notwithstanding the undeniable "costs associated with this approach." *Rose v. Mitchell*, 443 U.S. 545, 556-57 (1979) (internal quotations and citations omitted).

For example, in *Batson v. Kentucky*, a criminal defendant was permitted to allege race-based peremptory challenges. If the defendant could prove "prima facie, purposeful discrimination" without a "neutral explanation" for peremptory challenges, the "conviction must be reversed"; injury was assumed. 476 U.S. at 100 (citing cases). In *Vasquez v. Hillery*, 474 U. S. 254 (1986), a defendant was found guilty beyond reasonable doubt by an unbiased jury, but the Supreme Court set aside the conviction because of the unlawful exclusion of members of the defendant's race from the grand jury that indicted him, despite overwhelming evidence of his guilt.

The Court went even further in *Powers v. Ohio*. A white murder defendant sought to use *Batson* to challenge the prosecutor's use of peremptory challenges of black venirepersons. "Because Powers is white, the State argues, he cannot object to the exclusion of black prospective jurors. This limitation on a defendant's right to object conforms neither with our accepted rules of standing to raise a constitutional claim nor with the substantive guarantees of the Equal Protection Clause…" 499 U.S. at 406. The Court rejected any argument that Powers need show that "the individual jurors dismissed by the prosecution may have been predisposed to favor the

defendant." *Id.* at 411. Rather, racial discrimination "casts doubt on the integrity of the judicial process" and alone creates injury, *id.* (*quoting Rose,* 443 U. S. at 556), an injury even more severe when it "occurs at the behest of not just the parties but of the court itself." *Nelson*, 277 F.3d at 207.

As this Court has said, a racial discrimination claim in judicial proceedings is "a structural error that is not subject to harmless error review." *Tankleff v. Senkowski*, 135 F.3d 235, 248 (2d Cir. 1998); *accord Davis v. Secretary for Dept. of Corrections,* 341 F.3d 1310, 1316 (11th Cir. 2003) (noting Supreme Court reverses "without pausing to determine" whether exclusion "made any difference to the trial's outcome.").

"The harms… recognized in *Powers* are not limited to the criminal sphere. A civil proceeding often implicates significant rights and interests… Racial discrimination has no place in the courtroom, whether the proceeding is civil or criminal." *Edmonson*, 500 U.S. at 630. Nor is there any reason to restrict the *Batson/Powers* principle to just petit and grand jurors, rather than all aspects of judicial proceedings. *Powers* warned of the danger if "race is implicated" in "the standing or due regard of an attorney who appears in the cause." 499 U.S. at 412. While the right to a criminal or civil jury trial is by itself of constitutional significance, so is the question of adequacy of representation in a class action. *Philips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985); *Hansberry v. Lee*, 311 U.S. 32, 44-45 (1940). *See also In re Literary Works*, 654 F.3d 242, 254 (2d Cir. 2011) (striking settlement approval on adequacy of representation grounds, despite presumption of fairness) (*quoting Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 858 (1999)). "If [the grand jury] process is infected with racial discrimination, doubt is cast over the fairness of all subsequent decisions."

*Campbell*, 523 U.S. at 399. There is no reason for a different rule for the selection of class counsel, given that it is also of constitutional import.

Too, in other cases involving racial discrimination, the Supreme Court has not required a showing of "actual" inferiority of result to demonstrate standing; the lack of a race-blind process was by itself injury in fact. Thus, *Northeastern Fla. Chapter* explicitly rejected the proposition that "an association of contractors is required to show that one of its members would have received a contract absent the ordinance" challenged as racially discriminatory. 508 U.S. 656, 658 (1993). The injury in cases of these kind is the effect of the discrimination on the process; the aggrieved party "need not allege that he would have obtained the benefit but for the barrier in order to establish standing." *Id.* at 666; *accord Adarand*, 515 U.S. at 211. Similarly, a student complaining of unconstitutional racial discrimination in the college admissions process need not prove that the racial discrimination "actually" made the difference between their admission and non-admission. *Gratz*, 539 U.S. at 260-63.

That the panel so narrowly circumscribed standing in an equal protection case involving racial discrimination is especially surprising, because the Second Circuit goes even farther than the Supreme Court and presumes injury-in-fact from the "denial of equal protection" even where a plaintiff's challenged equal protection violation is not of a racial nature or from a judicial proceeding. In *Rockefeller*, plaintiffs challenged a ballot access requirement. Much as the panel did here, the defendants argued

> that, although the plaintiffs claim standing by virtue of their alleged lack of choice in the Republican presidential primary, there is no guarantee that a change in the ballot access rule would widen their choices, particularly since the plaintiffs cannot identify candidates

who have already been or definitely will be excluded by the signature requirement. Accordingly, say the defendants, there is no "injury in fact" that can be "redressed by a favorable decision." [74 F.3d at 1376]

This Court disagreed. "The 'injury in fact' in an equal protection case of this variety is the denial of equal treatment resulting from the imposition of the barrier, not the ultimate inability to obtain the benefit." *Id.* (*quoting Northeastern Fla. Chapter*, 508 U.S. at 666). The panel's holding that Martin's allegation that the unfair process "may interfere" with representation was insufficient directly contradicts *Rockefeller*.

Thus, that Martin objected, as the panel concedes, that the race-conscious selection process "may interfere with [counsel's] ability to provide the best representation for the class" (Decision 9 (*quoting* JA 829)), is sufficient to create standing under Supreme Court and Second Circuit jurisprudence.[3]

## C.    In the alternative, class members have third-party standing to attack an unconstitutionally race-conscious Rule 23(g) order.

At oral argument, class counsel suggested the only parties who had standing to protest the judge's race-based Rule 23(g) order were attorneys who had not been appointed to represent the class. For the reasons stated above, this is wrong; class members suffer injury in fact from a judicial proceeding tainted by racial discrimination and from the prospect that their class counsel was chosen by

---

[3] The right of opt out under Rule 23(b)(3) does not protect the constitutional right to adequate representation. A class action settlement precludes future class litigation, and in the case of a small-dollar antitrust claim, "[e]conomic reality dictates" that the case "proceed as a class action or not at all." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 161 (1974); *In re Amer. Express Merchants' Lit.*, 667 F.3d 204 (2d Cir. 2012), *cert. granted*, -- S. Ct. --, No. 12-133 (Nov. 9, 2012); *see also Amchem Prods. v. Windsor*, 521 U.S. 591 (1997); *In re GMC Pick-Up Trucks*, 55 F.3d 768, 809 (3d Cir. 1995).

something other than a racially unbiased method. But it is also wrong for two entirely separate reasons.

*First*, as a general principle, *any* class member objecting to a settlement she believes unfair has standing to raise any issue that may result in the invalidation of the settlement: a class member "has an interest in the settlement that creates a 'case or controversy' sufficient to satisfy the constitutional requirements of injury, causation, and redressability."[4]

Because Rule 23(e)(5) permits *any* class member to object, "[t]he person who has been accorded a procedural right to protect his concrete interests can assert that right without meeting all the normal standards for redressability and immediacy."[5] Under binding Supreme Court precedent, this broad language—"any"—definitively

---

[4] *Devlin v. Scardelletti*, 536 U.S. 1, 6-7 (2002); *Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1183 & n.1 (10th Cir. 2002) (objectors who have objected to entire settlement are entitled to raise all issues relating to settlement fairness with respect to entire class); *In re Cendant Corp. PRIDES Litig.*, 243 F.3d 722, 727-32 (3d Cir. 2001); *cf. also Union Asset Mgmt. Holding A.G. v. Dell, Inc.*, 669 F.3d 632 (5th Cir. 2012) (class member has standing to appeal settlement approval even though it had not filed a claim); *Nachshin v. AOL, LLC*, 663 F.3d 1034 (9th Cir. 2011) (ruling on objector-appellant's argument that *cy pres* unfairly directed); *In re Bluetooth Prods. Liab. Litig.*, 654 F.3d 935 (9th Cir. 2011) (ruling on objector-appellants' argument that $0 settlement directed too much money to attorneys and not enough to *cy pres*).

[5] *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 572 n.7 (1992). *See also Camreta v. Greene*, 131 S. Ct. 2020 (2011) (government official has standing to challenge underlying constitutional judgment below even though lower court held that qualified immunity precluded monetary liability; official's future legal position being altered by lower court's pronouncement sufficient to create "personal stake"); *Bond v. United States*, 131 S. Ct. 2355, 2363 (2011) (prudential standing does not bar individual from asserting injury from governmental action taken in excess of the authority that federalism defines).

settles that the "zone of interests" extends to any class member.[6] Permitting an objector to raise appellate issues with respect to the broader interests of other litigation participants in the hopes of reversing a class action judgment is not unique to Rule 23(e): for example, in *Phillips Petroleum v. Shutts*, the Supreme Court permitted a defendant to raise the issue of the due process rights of absent class members despite the fact it "d[id] not possess standing *jus tertii*," and was "assert[ing] the rights of its adversary, the plaintiff class." 472 U.S. 797, 803-06 (1985). Similarly, in *Creative Montessori Learning Centers v. Ashford Gear LLC*, 662 F.3d 913, 917-19 (7th Cir. 2011), a *defendant* had standing to raise a *hypothetical* Rule 23(g) appointment issue. Thus, class members can assert the rights of attorneys deprived of a race-neutral Rule 23(g) process.

*Second*, and more specifically to this case, the Supreme Court holds that parties to judicial proceedings have the third-party standing to assert the rights of those affected by racial bias in those proceedings. Thus, a white criminal defendant can assert the rights of blacks affected by race discrimination in petit or grand jury selection even when there has been no Sixth Amendment violation. *Compare Campbell, supra; Powers,* 499 U.S. at 410-15 *with Holland v. Illinois*, 493 U.S. 474 (1990). A civil defendant has third-party standing to assert the rights of racially excluded jurors. *Edmonson*, 500 U.S. at 629. A "litigant may raise a claim on behalf of a third party if

---

[6] *Compare Bennett v. Spear*, 520 U.S. 154, 163-66 (1997) (statute permitting "any person [to] commence a civil suit" is authorization of "remarkable breadth" to the "full extent permitted under Article III") *with American Immig. Lawyers Ass'n v. Reno*, 199 F.3d 1352, 1358 (D.C. Cir. 2000) (IIRIRA includes no language like "any" that would override prudential standing).

the litigant can demonstrate that he or she has suffered a concrete, redressable injury, that he or she has a close relation with the third party, and that there exists some hindrance to the third party's ability to protect his or her own interests." *Id.*

Though two out of three would be sufficient, *Caplin & Drysdale v. United States*, 491 U.S. 617, 624 n.3 (1989), all three are true here. Class member Martin has alleged the injury of an unfair settlement; Martin has further suffered the injury from being bound by the decisions of class counsel appointed through a racially discriminatory process. The injury is redressable: the Second Circuit could reverse the Rule 23(g) order, thus nullifying the unfair settlement; on remand, new class counsel could be appointed through a race-neutral process that would negotiate a settlement of the underlying antitrust claims that provides relief to the class proportionate to the reward to the attorneys. (That the new class counsel could hypothetically act in as selfish a manner as current class counsel does not affect redressability. *Rockefeller*, 74 F.3d at 1376.) The relationship between a class member and counsel is closer than that of a civil defendant and a rejected venireperson: class counsel owes a fiduciary duty to class members. Moreover, as in *Campbell*, where a successful challenge would reverse a conviction, Martin has sufficient incentive to raise the issue because a successful challenge would reverse a settlement approval he is challenging. And there is an obvious hindrance "to the third party's ability to protect his or her own interests": any member of class counsel's firm adversely affected by the race-conscious order would risk the ire of his employer and the district court by challenging the order; any prospective injunction achieved years later would be a Pyrrhic victory given the internal consequences at his employer for interfering with a multi-million case. "[A]

cognizable injury for third-party standing purposes [i]s guided by the fact that the [claimant] was a party in the specific [case] at issue." *Thomas v. Mundell*, 572 F.3d 756, 762-763 (9th Cir. 2009) (*citing Georgia v. McCollum*, 505 U.S. 42, 55-56 (1992)).

The panel's standard is necessarily wrong for an independent reason. Under the panel's standard, if a district court announced that it was going to ignore the provisions of Rule 23(g)(1)(A)(i) entirely and appoint a friend as class counsel, a class member could not raise the objection to the illegal procedure unless they could prove inferior representation. This cannot possibly be correct.

The Second Circuit (as it must) permits objecting class members to *directly* challenge the adequacy of representation. *Literary Works*, *supra*. How could a class plaintiff have less third-party standing to address race-conscious Rule 23(g) selection than a Campbell or Edmonson to address race-conscious jury selection?

## II. Rehearing is also appropriate because of the panel's errors of fact and law.

The only relief class members were entitled to under the settlement was a coupon offer available for five months, disingenuously characterized as "injunctive relief," permitting class members to purchase Sirius service at the list price of $12.95/month—the same price available to non-class members. Because Martin, like many class members, was paying less than $5/month for his Sirius service (JA 821) using the settlement coupon would have made him worse off by at least $80. Nevertheless, though the relief was no different than offering a coupon for a cup of Starbucks for $13, class counsel claimed that the settlement was worth $180 million. The only evidence for this imaginary valuation was an expert report by a Dr.

Langenfeld that falsely assumed that Sirius did not discount (JA 528-49)—and, because that report was filed late on a Friday night during a weekend that PACER was unavailable, was not available to class members until the day before objections were due. JA 828.

The district court adopted the Langenfeld report in full without providing a reasoned response to the objections challenging it or any defense or explanation of a Rule 23(h) procedure that required objections to be filed the day after the expert report was due. SPA 17. In response to appeals challenging the valuation and the procedure, the panel affirmed, holding

> "although objectors now complain that the district court did not thoroughly evaluate the value of the settlement, no one requested an evidentiary hearing to ascertain the settlement's value, more time to identify expert witnesses, or an opportunity to present any witnesses." [Decision 5.]

But the legal and factual premises behind this reasoning is false. As Martin's counsel stated at oral argument, Martin requested a procedure with a reasonable objection deadline consistent with Fed. R. Civ. Proc. 23(h):

> "Because of the artificial objection deadline, class members have not had a fair opportunity to evaluate the fairness of the fee request. … Had Mr. Martin had a reasonable time to respond, he would have been able to scrutinize the lodestar evidence; he might also have chosen to retain an economic expert to more fully demonstrate why Dr. Langenfeld's declaration was unreasonable. … [T]he Court can read paragraph 3 of the Langenfeld Declaration and see on its face that it is assuming without any evidentiary basis the controversial premise on which its conclusions rest, and is thus inadmissible. But if the Court were to nevertheless credit the Langenfeld Declaration, Mr. Martin would have been prejudiced by his inability to secure expert testimony with one day's notice. … [The notice] fail[s] to meet due process requirements." [JA 809, JA828 & n.3]

*Brennan v. NYC Bd. of Educ.*, 260 F.3d 123, 130 & n.4 (2d Cir. 2001), is directly on point. The Second Circuit there held it impermissible for a district court to establish procedures that made it impossible for settlement objectors to rebut evidence relied upon by the trial court. The 2003 amendments to Rule 23(h) have since ensconced this principle. *See generally In re Mercury Interactive Corp. Sec. Lit.*, 618 F.3d 988, 993-94 (9th Cir. 2011) (*quoting* Advisory Committee Notes to the 2003 amendments to Rule 23(h) *and* 5 *Moore's Federal Practice* § 23.124[4] (Matthew Bender 3d ed. 2009)).

And contrary to the panel decision, Martin requested additional fact-finding:

> "[W]e can only know [the settlement] value when we know (1) the number of class members who subscribe to Sirius XM using the injunctive relief; and (2) the amount by which Sirius XM raises its prices on January 1, 2012. (The Court also needs to know (3) whether Sirius XM ceases its discounting program between now and December 31, 2011. If Sirius XM continues its discounting program to subscribers who ask the right salespeople the right questions, then the coupons are superfluous, because better prices are available to class members without the injunctive relief.) Without that knowledge, we cannot ascribe a redemption value to the coupons… Mr. Martin strongly suspects that if the Court were to wait for that information, the ultimate redemption value will be zero: competition will require Sirius XM to continue to offer deep discounts to customers and class members who have the savvy to negotiate such rates." [JA 831][7]

Neither the district court nor the panel gave a reasoned response to these arguments or mentioned Rule 23(h). The panel's decision misapprehended the facts and the law, and conflicts with Second and Ninth Circuit law.

---

[7] Had the court conducted the requested evidentiary inquiry, Martin's suspicion would have been vindicated. In direct contradiction of its arguments to the district court, Sirius continues discounting today, offering Martin and other customers (such as Martin's counsel) subscriptions for under $4.17/month. Any class member who accepted the settlement "relief" instead would have been over $90 worse off.

## Conclusion

The panel has created a "crippling burden of proof" that makes the district court's race-conscious order "largely immune from constitutional scrutiny." *Cf. Batson*, 476 U.S. at 92-93. It thus contradicts the Supreme Court's consistent holdings that unconstitutional racial discrimination in judicial proceedings by itself creates standing—even third-party standing—to challenge the wrong, and this Circuit's holding that a plaintiff may challenge even a non-racial equal-protection violation without demonstrating that the violation "actually" prejudiced them. Rehearing or rehearing *en banc* is thus appropriate.

The panel further erred when it asserted that Martin waived his objections to the settlement valuation procedure. The record shows otherwise, and this is an independent ground for Rule 40 rehearing. The panel's decision on this question conflicts with Fed. R. Civ. Proc. 23(h) and the law of the Second and Ninth Circuits, and this is an independent ground for rehearing or rehearing *en banc*.

Martin joins any petition for rehearing or rehearing *en banc* filed by any other appellant to the extent it is not inconsistent with his arguments here. Fed. R. App. Proc. 28(i).

Dated:  January 3, 2013          Respectfully submitted,

*/s/ Theodore H. Frank*
Theodore H. Frank
CENTER FOR CLASS ACTION FAIRNESS
1718 M Street NW, No. 236
Washington, DC 20036
Telephone:  (703) 203-3848
Email:  tfrank@gmail.com
Attorney for Appellant Nicolas Martin

**Proof of Service**

I hereby certify that on January 3, 2013, I electronically filed the foregoing with the Clerk of the United States Court of Appeals for the Second Circuit using the CM/ECF system, which will provide notification of such filing to all counsel of record, with the exception of the following parties, whom I caused to be served by first-class mail.

Donald K. Nace
1000 Suffolk Court
Cedar Park, TX 78613

Brian David Goe
Michael Hartleib
P.O.Box 7078
Laguna Niguel, CA 92677

Executed on January 3, 2013.

*/s/ Theodore H. Frank*
Theodore H. Frank
CENTER FOR CLASS ACTION
FAIRNESS
1718 M Street NW, No. 236
Washington, DC 20036
Telephone: (703) 203-3848
Email: tfrank@gmail.com

Attorney for Appellant Nicolas Martin

**Certificate of Compliance
with Fed. R. App. 32(a)(7)(C)**

Certificate of Compliance with Type-Volume Limitation, Typeface Requirements, and Type Style Requirements:

1.      This brief complies with the type-volume limitation of Fed. R. App. Proc. 35 and Fed. R. App. Proc. 40 because:

This brief is fifteen pages long, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.      This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

This brief has been prepared in a proportionally spaced typeface using Microsoft Word 2010 in 14-point Garamond font.

Executed on January 3, 2013.

*/s/ Theodore H. Frank*
Theodore H. Frank
CENTER FOR CLASS ACTION
FAIRNESS
1718 M Street NW, No. 236
Washington, DC 20036
Telephone: (703) 203-3848
Email: tfrank@gmail.com

Attorney for Appellant Nicolas Martin

# Addendum

11-3696-cv (L)
Blessing et al., v. Martin

## UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

### SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007 IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1.  WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER").  A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

        At a stated term of the United States Court of Appeals for the Second Circuit, held at the Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, in the City of New York, on the 20th day of December, two thousand twelve.

PRESENT:  ROBERT D. SACK,
          DENNY CHIN,
          RAYMOND J. LOHIER, JR.,
                    Circuit Judges.

- - - - - - - - - - - - - - - - - - -x

CARL BLESSING, EDWARD A. SCERBO, JOHN CRONIN, CHARLES BONISIGNORE, ANDREW DREMAK, TODD HILL, CURTIS JONES, JOSHUA NATHAN, JAMES SACCHETTA, DAVID SALYER, SUSIE STANAJ, PAUL STASIUKEVICIUS, SCOTT BYRD, GLENN DEMOTT, MELISSA FAST, JAMES HEWITT, RONALD WILLIAM KADER, EDWARD LEYBA, GREG LUCAS, KEVIN STANFIELD, TODD STAVE, PAOLA TOMASSINI, JANEL STANFIELD, BRIAN BALAGUERA, individually and on behalf of all others similarly situated,
                    Plaintiffs-Appellees,

                    -v.-

SIRIUS XM RADIO INC.,
                    Defendant-Appellee,

                                        11-3696-cv (Lead)
                                        11-3729-cv (Con)

|  | 11-3834-cv (Con) |
|  | 11-3883-cv (Con) |
| -v.- | 11-3908-cv (Con) |
|  | 11-3910-cv (Con) |
|  | 11-3916-cv (Con) |
|  | 11-3965-cv (Con) |
|  | 11-3970-cv (Con) |
|  | 11-3972-cv (Con) |

MARVIN UNION, ADAM FALKNER, NICOLAS
MARTIN, JILL PIAZZA, KEN WARD, RUTH
CANNATA, LEE CLANTON, CRAIG
CANTRALL, BEN FRAMPTON, KIM
FRAMPTON, JOEL BROIDA, JOHN
SULLIVAN, SHEILA MASSIE, JASON M.
HAWKINS, STEVEN CRUTCHFIELD, SCOTT
D. KRUEGER, ASSET STRATEGIES, INC.,
CHARLES B. ZURAVIN, JENNIFER
DEACHIN, RANDY LYONS, TOM CARDER,
JOHN IRELAND, JEANNIE MILLER,
MICHAEL HARTLEIB, BRIAN DAVID GOE,
DONALD K. NACE, CHRISTOPHER BATMAN,
                    Objectors-Appellants,

LINDA MROSKO, LANGE M. THOMAS,
                    Objectors.

- - - - - - - - - - - - - - - - - - -x

FOR PLAINTIFFS-APPELLEES:       JAMES J. SABELLA (Jay W.
                                Eisenhofer, Richard S. Schiffrin,
                                Shelly L. Friedland, Grant &
                                Eisenhofer P.A., New York, New
                                York, Mary S. Thomas, Grant &
                                Eisenhofer P.A., Wilmington,
                                Delaware, Reuben Guttman, Grant &
                                Eisenhofer, Washington, District of
                                Columbia, Paul F. Novak, Milberg
                                LLP, Detroit, Michigan, Herman
                                Cahn, Anne Fornecker, Milberg LLP,
                                New York, New York, Nicole Duckett,
                                Milberg LLP, Los Angeles,
                                California, Christopher B. Hall,
                                Edward S. Cook, P. Andrew Lampros,
                                Cook, Hall & Lampros, LLP, Atlanta,
                                Georgia, on the brief).

FOR DEFENDANTS-APPELLEE:        TODD R. GEREMIA (John M. Majoras,
                                Thomas Demitrack, on the brief),
                                Jones Day, New York, New York.

FOR OBJECTORS-APPELLANTS:       THEODORE H. FRANK, Center for Class
                                Action Fairness LLC, Washington,
                                District of Columbia, PAUL S.

ROTHSTEIN, Gainesville, Florida
(Michael Hartlieb, <u>pro se</u>, Brian
David Goe, <u>pro se</u>, N. Albert
Bacharach, Jr., Gainesville,
Florida, R. Stephen Griffis,
Hoover, Alabama, Charles M.
Thompson, Birmingham, Alabama,
Joseph Darrell Palmer, Law Offices
of Darrell Palmer P.C., Solana
Beach, California, Steve A. Miller,
Denver, Colorado, <u>on the briefs</u>).

FOR AMICUS CURIAE:            Michael E. Rosman, Michelle A.
                             Scott, <u>for</u> Center for Individual
                             Rights, Washington, District of
                             Columbia.

                             Meriem L. Hubbard, Joshua P.
                             Thompson, <u>for</u> Pacific Legal
                             Foundation, Sacramento, California.

    Appeal from the United States District Court for the
Southern District of New York (Baer, <u>J.</u>).

    **UPON DUE CONSIDERATION, IT IS ORDERED, ADJUDGED, AND
DECREED** that the judgment and order of the district court are
**AFFIRMED.**

    Objectors-appellants appeal from the district court's
August 25, 2011 final order and judgment approving the settlement
of this class action, and its August 25, 2011 order awarding
class counsel $13 million in attorneys' fees and expenses.  We
assume the parties' familiarity with the underlying facts, the
procedural history of the case, and the issues on appeal.

    This Court reviews for abuse of discretion a district
court's approval of a proposed class action settlement, <u>D'Amato
v. Deutsche Bank</u>, 236 F.3d 78, 85 (2d Cir. 2001), and its award
of attorneys' fees, <u>In re Nortel Networks Corp. Sec. Litig.</u>, 539
F.3d 129, 134 (2d Cir. 2008).

-3-

Collectively, objectors argue, <u>inter alia</u>, that the district court erred when it:  (1) found that the proposed settlement was fair, reasonable, and adequate; (2) found that the attorneys' fee award was reasonable; and (3) directed the sole candidate for class counsel to address diversity concerns in staffing the case.  We address each of these arguments in turn.

**1.    The Proposed Settlement**

A district court's approval of a settlement is contingent on a finding that the settlement is "fair, reasonable, and adequate."  Fed. R. Civ. P. 23(e)(2); <u>see also</u> 28 U.S.C. 1712(e) (2006) (judicial scrutiny of coupon settlement requires finding that the settlement is "fair, reasonable, and adequate").  This entails a review of both procedural and substantive fairness.  <u>See, e.g.</u>, <u>D'Amato</u>, 236 F.3d at 85.  With respect to procedural fairness, a proposed settlement is presumed fair, reasonable, and adequate if it culminates from "arm's-length negotiations between experienced, capable counsel after meaningful discovery."  <u>McReynolds v. Richards-Cantave</u>, 588 F.3d 790, 803 (2d Cir. 2009) (internal quotation marks omitted).  A proposed settlement is substantively fair if the nine factors outlined in <u>City of Detroit v. Grinnell Corp.</u> weigh in favor of that conclusion.  <u>See, e.g.</u>, <u>Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.</u>, 396 F.3d 96, 117 (2d Cir. 2005) (citing <u>Grinnell</u>, 495 F.2d 448, 463 (2d Cir. 1974)).

Here, the proposed settlement provided, in part, that defendant-appellant Sirius XM Radio Inc. ("Sirius XM") would not raise its prices for five months.  Furthermore, class members

-4-

received no cash remedy.  The case was settled on the eve of trial, after nearly three years of litigation, including extensive fact and expert discovery.  Moreover, competent counsel appeared on both sides, and settlement was reached only after contentious negotiations.  Thus, the district court did not abuse its discretion when it presumed the proposed settlement was procedurally fair, see McReynolds, 588 F.3d at 803, and objectors presented no evidence to rebut that presumption.

The record also supports a finding of substantive fairness.  The district court conducted a fairness hearing, where it considered objectors' arguments.  The district court's opinion and order approving the proposed settlement also noted that it had considered the oral and written submissions of the objectors. Moreover, although objectors now complain that the district court did not thoroughly evaluate the value of the settlement, no one requested an evidentiary hearing to ascertain the settlement's value, more time to identify expert witnesses, or an opportunity to present any witnesses.

Finally, the Grinnell factors supported the district court's determination that the proposed settlement was substantively fair.  In particular, it became apparent that, were the case to go to trial, plaintiffs' likelihood of success was slim.  We acknowledge that valuing nonmonetary antitrust settlements -- much like the price freeze here -- is an inherently imprecise business, see Merola v. Atl. Richfield Co., 515 F.2d 165, 172 (3d Cir. 1975) (courts should apply their "informed economic judgment" and any "probative evidence of the

monetary value" of the remedy when assessing nonmonetary antitrust settlement value), and as the record provides a factual basis for its finding, we hold that the district court did not abuse its discretion when it concluded that the proposed settlement was substantively fair.

**2.    Reasonableness of the Attorneys' Fee Award**

Except as otherwise required by statute, fees awarded pursuant to a class action suit must be calculated as either a "percentage of the fund" or by applying the lodestar method. See, e.g., Masters v. Wilhelmina Model Agency, Inc., 473 F.3d 423, 436 (2d Cir. 2007); Wal-Mart Stores, 396 F.3d at 121.  The reasonableness of a fee calculated by either of these methods, however, is determined by the factors outlined in our decision in Goldberger v. Integrated Res., Inc., 209 F.3d 43, 50 (2d Cir. 2000).  See Masters, 473 F.3d at 436.

Objectors contend that the $13 million fee was unreasonable because of the clear-sailing and reversionary provisions written into the settlement, and in light of the limited recovery to the class.  To the extent objectors argue that the clear-sailing and reversionary provisions suggest improper collusion between class counsel and Sirius XM, we note that such provisions, without more, do not provide grounds for vacating the fee.  See Malchman v. Davis, 761 F.2d 893, 905 & n.5 (2d Cir. 1985) (addressing clear-sailing provision), abrogated on other grounds, Amchem Prods., Inc. v. Windsor, 521 U.S. 591 (1997).  Moreover, the fee was negotiated only after settlement terms had been decided and did not, as the district court found,

reduce what the class ultimately received.  See id. (such factors favored respecting the fee); Thompson v. Metro. Life Ins. Co., 216 F.R.D. 55, 71 (S.D.N.Y. 2003) (same).  Finally, the district court independently inspected applicable time and expense records before judging the reasonableness of the requested fee, which -- after accounting for expenses -- represented less than sixty percent of the lodestar calculation.  Thus, as the record supports a finding that the $13 million award was reasonable, the district court did not abuse its discretion in granting the fee award.

Objectors also argue that the price freeze offered in the proposed settlement was the equivalent of a "coupon" and, therefore, should have been subject to the attorneys' fee provisions applicable to coupon settlements under the Class Action Fairness Act of 2005 ("CAFA").  See § 1712(a)-(c).  We need not, however, decide this issue.  Even assuming that the coupon provisions of CAFA were applicable, the district court's approval of the proposed settlement and the attorneys' fee award was appropriate.  As noted, the attorneys' fees were negotiated only after the terms of the settlement were reached, and the fee award comes directly from Sirius XM, rather than from funds (or coupons) earmarked for the class.

Thus, even assuming the price freeze was the equivalent of a coupon, no "portion of [the] attorney's fee award . . . is attributable to the award of the coupons."  § 1712(a).  Where "a portion of the recovery of the coupons is not used to determine the attorney's fee to be paid to class counsel, any attorney's

-7-

fee award shall be based upon the amount of time class counsel reasonably expended working on the action." § 1712(b)(1); see also S. Rep. No. 109-14, at 30 (2005) ("[T]he proponents of a class settlement involving coupons may decline to propose that attorney's fees be based on the value of the coupon-based relief provided by the settlement. Instead, the settlement proponents may propose that counsel fees be based upon the amount of time class counsel reasonably expended working on the action."). The district court approved the fee award after determining it was reasonable under the lodestar method, which reflects "the amount of time class counsel reasonably expended working on the action," and is therefore consistent with CAFA. § 1712(b), (c)(2).

**3.    Diversity of Class Counsel**

In the class certification order, the district court requested that class counsel consider diversity when staffing the case,[1] a provision objectors now contest. To establish standing to bring a claim, a plaintiff must show (1) injury-in-fact, (2) causation, and (3) redressability. Town of Babylon v. Fed. Hous. Fin. Agency, 699 F.3d 221, 228 (2d Cir. 2012). An injury-in-fact is a "'concrete and particularized' harm to a 'legally protected interest.'" Selevan v. N.Y. Thruway Auth., 584 F.3d 82, 89 (2d Cir. 2009); see also W.R. Huff Asset Mgmt. Co., LLC v. Deloitte & Touche LLP, 549 F.3d 100, 107 (2d Cir. 2008) ("[P]laintiff must have personally suffered an injury."). Although objectors allege

---

[1]    The class certification order stated that class counsel "should ensure that the lawyers staffed on the case fairly reflect the class composition in terms of relevant race and gender metrics." Opinion and Order at 14, Blessing v. Sirius XM Radio Inc., No. 09-cv-10035 (S.D.N.Y. Mar. 29, 2011), ECF No. 85.

that staffing a case with an eye to diversity "may interfere with [counsel's] ability to provide the best representation for the class," J.A. 829, they never contend that class counsel's representation was actually inferior.  As objectors failed to state an injury-in-fact, we find that they lack standing to challenge the district court's diversity request in its class certification order.

We have considered objectors' remaining arguments and conclude they are without merit.  For the foregoing reasons, we **AFFIRM** the orders and judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk



-9-